IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

UNITED STATES OF AMERICA                                        PLAINTIFF

V.                      Case No. 3:16-cr-30011-PKH-MEF-1

PATRICIA GAYLE LEWIS-ZUBKIN                                     DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed on November 29, 2018. (ECF No. 261). The United States filed a response on January 15, 2019. (ECF No. 269). Defendant has not filed a reply. The matter is ready for Report and Recommendation.

### I. Background

On October 5, 2016, Defendant, Patricia Gayle Lewis-Zubkin ("Lewis-Zubkin"), was named in four counts of a 22 count, multi-defendant indictment. (ECF No. 1). Count One charged her with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. Counts Five, Six and Fifteen charged her with aiding and abetting the distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 18 U.S.C. § 2. (*Id*.). Lewis-Zubkin was arrested on October 27, 2016. (ECF No. 84).

On October 31, 2016, she was arraigned before the Hon. Mark E. Ford, U. S. Magistrate Judge, and she entered a plea of not guilty to the Indictment. (ECF No. 38). Attorney David L. Dunagin ("Dunagin") was appointed to represent Lewis-Zubkin, and Dunagin requested discovery in open court. (*Id*.). Pursuant to her request, a detention hearing was scheduled for November 2, 2016, but Lewis-Zubkin later waived the issue of detention and withdrew her request for a

detention hearing. (ECF No. 41). A jury trial was scheduled for January 4, 2017. (ECF Nos. 38, 42).

Lewis-Zubkin appeared before the Hon. P. K. Holmes, III, Chief U.S. District Judge, for a change of plea hearing on December 29, 2016. (ECF No. 115). Pursuant to a written Plea Agreement, Lewis-Zubkin pleaded guilty to Count One of the Indictment charging her with conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. (ECF No. 116). The Court determined Lewis-Zubkin's guilty plea was voluntary and supported by an independent basis in fact. (ECF Nos. 115, 268). Her guilty plea was accepted and she was found guilty as charged. (*Id*.).

On August 25, 2017, an initial Presentence Investigation Report ("PSR") was prepared by the United States Probation Office. (ECF No. 128). The Government made no objections to the PSR. (ECF No. 137). Lewis-Zubkin made numerous objections to the PSR, many to request clarification of factual matters that did not affect the guidelines calculation, but also to challenge a statement attributed to her that she was providing a pound of meth every few days to a co-conspirator, and to a two-level enhancement for use of violence or a credible threat to use violence. (ECF No. 152).

A final PSR was submitted to the Court on August 25, 2018, along with an Addendum responding to Lewis-Zubkin's objections. (ECF Nos. 194, 194-1). The PSR determined that Lewis-Zubkin was responsible for 3.54 kilograms of actual meth, resulting in a base offense level of 36. (ECF No. 194, ¶¶ 141, 144, 149). A two-level upward adjustment was assessed, pursuant to USSG § 2D1.1(b)(2), because Lewis-Zubkin used violence, made a credible threat to use violence, or directed the use of violence. (*Id*., ¶ 150). A four-level upward adjustment was made, pursuant to USSG § 3B1.1(a), for Lewis-Zubkin's role as an organizer or leader of a criminal

activity that involved five or more participants.  (*Id*., ¶ 152).  After a three-level reduction for acceptance of responsibility, Lewis-Zubkin's total offense level was reported to be 39.  (*Id*., ¶¶ 156-158).

Lewis-Zubkin was found to have a criminal history score of 7, placing her in criminal history category IV.  (*Id*., ¶¶ 176-178).  The maximum term of imprisonment for the offense of conviction is 20 years.  (*Id*., ¶ 206).  Based upon a total offense level of 39 and a criminal history category of IV, the advisory guidelines imprisonment range was 360 months to life; however, the statutory maximum for her offense is 20 years (240 months), so the guidelines imprisonment range was reduced to 240 months.  (*Id*., ¶ 207).

Attorney Dunagin filed a Sentencing Memorandum on Lewis-Zubkin's behalf on October 10, 2017.  (ECF No. 203).  She challenged the two-level enhancement for violence; she requested consideration of 18 U.S.C. § 3553(a) factors, such as her advanced age and poor health; she argued she was not able to pay more than a minimal fine; and, she requested a downward variance or departure to impose a sentence of 144 months imprisonment.  (*Id*.).

Sentencing was held on October 31, 2017 before the Hon. P. K. Holmes, III.  (ECF No. 212).  Lewis-Zubkin again confirmed her satisfaction with her attorney.  (*Id*.; ECF No. 251, pp. 2-3).  She acknowledged that she had an opportunity to review the PSR and discuss it with her counsel.  (*Id*.; ECF No. 251, p. 3).  Noting that most of Lewis-Zubkin's objections to the PSR had been resolved by revisions to the PSR, the Court entertained argument from counsel regarding Lewis-Zubkin's remaining objection to the two-level enhancement for use or threat of violence.  (ECF No. 251, pp. 3-4).  Referring to conduct outlined in the PSR, including numerous conversations in which Lewis-Zubkin stated her belief that two co-conspirators were working with law enforcement and should be assaulted, the Court found clear evidence that Lewis-Zubkin

directed the use of violence, and her objection to the two-level enhancement for violence or the threat of violence was overruled. (*Id.*, pp. 4-6). The Court commented that "normally we do not see criminal defendants here at her age and station in life," but that "age alone is not to be a determining factor of the length of someone's sentence." (*Id.*, p. 10). Lewis-Zubkin was sentenced to 240 months imprisonment, three years of supervised release, no fine, and a $100.00 special assessment. (ECF No. 212).

Lewis-Zubkin filed a Notice of Appeal on November 2, 2017. (ECF No. 225). On appeal, she challenged the imposition of the violence enhancement under U.S.S.G. § 2D1.1(b)(2). (ECF No. 260-1). She also filed a Motion to Reduce Sentence in this Court on February 5, 2018. (ECF No. 253). That motion was denied on February 5, 2018 due to lack of jurisdiction. (ECF No. 254). On November 6, 2018, the Eighth Circuit Court of Appeals affirmed the judgment of the district court. (ECF No. 260-1). *United States v. Lewis-Zubkin*, 907 F.3d 1103 (8th Cir. 2018).

On November 29, 2018, Lewis-Zubkin filed her Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (ECF No. 261). She first claims ineffective assistance of counsel and "my health." (*Id.*, p. 4). For supporting facts, she states that her counsel "did not represent me as well as he could have," "did not argue on the 2 point enhancement I was given, hasn't appealed the decision yet," "he didn't work for me, or seem to have enough knowledge about my case to do me any justice in the courts, I hardly ever saw him," and "at my age this sentence is too extreme for a woman with my health." (*Id.*). She next claims that she "plead guilty under much duress," that "I was threatened with a life sentence if I didn't plead guilty," and that she was "also threatened that if I tried to make bond that they would seek a life sentence." (*Id.*, p. 5).

4

The United States filed its response in opposition to Lewis-Zubkin's § 2255 motion on January 15, 2019.  (ECF No. 269).  Lewis-Zubkin did not file a reply.

## II. Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

A review of Lewis-Zubkin's § 2255 motion, and the entire record, demonstrates that she is not entitled to relief, and the summary dismissal of her motion is recommended.

### A. Ground One: Ineffective Assistance of Counsel and Sentence Extremity

Lewis-Zubkin's first ground for relief does not meet the standards required for an ineffective assistance of counsel claim per *Strickland v. Washington*, 466 U.S. 668 (1984).  The supporting facts she alleges are vague and conclusory statements that are contradicted by the record.  She also claims her sentence was too harsh for her age and health, but that sentencing argument is not cognizable under § 2255.  Further, her age and health were both considered by the

Court at sentencing, but the Court determined that these factors were countered by her role as a major methamphetamine supplier and the need to avoid unwarranted sentence disparities.

### 1. Vague and Conclusory Allegations are Insufficient

Vague and conclusory allegations are insufficient to support a claim under 28 U.S.C. §2255. *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986). Although a *pro se* § 2255 petitioner is allowed a more liberal construction than in other civil proceedings, he must still allege facts with "sufficient specificity." *Saunders v. United States*, 236 F.3d 950, 953 (8th Cir. 2001) (citing *Cooper v. Schriro*, 189 F.3d 781, 785 (8th Cir. 1999)). Conclusory allegations, unsupported by specific facts, are subject to summary dismissal. *Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982).

Here, Lewis-Zubkin makes only the following statements as supportive facts regarding the alleged ineffectiveness of her counsel:

- "Did not represent me as well as he could have."

- "Did not argue on the 2 point enhancement I was given, hasn't appealed the decision yet."

- "He didn't work for me, or seem to have enough knowledge about my case to do me any justice in the courts, I hardly ever saw him." (ECF No. 261, p. 4).

Her sparse allegations do not support a claim for relief and are contrary to the record.

The first and third statements do not make any factual assertions, but merely express Lewis-Zubkin's subjective opinion. She does not specify how Dunagin should have performed differently, not does she provide any details on how Dunagin's performance prejudiced her.

Her second statement is plainly contradicted by the record. Contrary to Lewis-Zubkin's allegation, Dunagin did object to the U.S.S.G. § 2D1.1(b)(2) enhancement reported in the initial PSR. (ECF No. 152). He then argued the objection again in a Sentencing Memorandum filed on

October 10, 2017.  (ECF No. 203).  During sentencing, Dunagin stated that he had discussed the two-level violence enhancement with Lewis-Zubkin, and they would rely on their pleadings to support their argument that the enhancement should not apply.  (ECF No. 251, p. 4).  The Government likewise relied exclusively on its Sentencing Memorandum.  (*Id.*).  Finding clear evidence of Lewis-Zubkin's threats of violence, her objection to the enhancement was ultimately overruled by the Court and the two-level upward adjustment was applied.  (*Id.*, pp. 4-6).

Lewis-Zubkin then pursued a direct appeal to the Eighth Circuit Court of Appeals, and the § 2D1.1(b)(2) enhancement was argued on appeal.  (ECF No. 260-1).  On November 6, 2018, the Eighth Circuit affirmed.  Thus, Lewis-Zubkin's allegations that her counsel "did not argue on the 2 point enhancement I was given, [and] hasn't appealed the decision yet" are patently false.

## 2. Ineffective Assistance of Counsel Standards

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases."  *Id*. at 688.  Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689.  Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690).  Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission.  *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991).

If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687).

Here, Lewis-Zubkin claims Dunagin "[d]id not represent me as well as he could have," but she fails to allege any specific facts to demonstrate just how her counsel's performance was deficient. (ECF No. 261, p. 4). And, her sworn testimony in two different proceedings contradicts her current claims. The following exchange during the plea colloquy refutes Lewis-Zubkin's allegation:

"THE COURT: Now, have you been fully satisfied with the counsel, the representation, and advice that you've received from your lawyer, Mr. Dunagin?

A. Yes, sir." (ECF No. 268, p. 4).

A like exchange occurred during the sentencing hearing:

"THE COURT: … first I want to ask you, have you been satisfied with the counsel and the representation and the advice that you have received from your attorney, Mr. Dunagin?

THE DEFENDANT: Yes, Your Honor." (ECF No. 251, pp. 2-3).

Despite those sworn statements to the Court, Lewis-Zubkin now claims ineffective assistance of counsel, but she fails to provide any specific factual allegations or showing of how

Dunagin's actions in representing her fell outside the range of competence required for criminal cases. This holds true for her other assertion that "he didn't work for me, or seem to have enough knowledge about my case…" (ECF No. 261, p. 4). As noted above, vague and conclusory allegations are insufficient to support a claim under 28 U.S.C. § 2255. *Hollis v. United States*, 796 F.2d at 1046. Conclusory allegations, unsupported by specific facts, are subject to summary dismissal. *Smith v. United States*, 677 F.2d at 41.

Accordingly, Lewis-Zubkin's claim of ineffective assistance of counsel falls well short of the applicable standard and her first ground for relief should be denied and dismissed.

### 3. Health and Sentence Extremity are Not Cognizable Under § 2255

Lewis-Zubkin next claims that "at my age this sentence is too extreme for a woman with my health." (ECF No. 261, p. 4). Her age and health were reported in the PSR, argued at sentencing, and properly considered by the Court. Her vague and conclusory argument that these factors render her sentence "too extreme" is simply not cognizable under 28 U.S.C. § 2255.

The PSR reported that Lewis-Zubkin, age 63 at sentencing, "suffers from sciatic nerve problems in her back and high blood pressure," but that she was not taking any medications for those conditions. (ECF No. 194, pp. 3, 29). She denied any history of mental or emotional health problems, but she admitted having a substance abuse problem for which she wished to participate in substance abuse treatment during her incarceration. (*Id.*, pp. 29-30). Lewis-Zubkin submitted a Sentencing Memorandum in which she asked the Court to consider her age and medical issues. (ECF No. 203, p. 2).

During sentencing, the Government pointed out that "[s]he is a unique defendant because of her station in life." (ECF No. 251, p. 9). The Court acknowledged this, commenting that "I do admit in regard to your remark about her age, you are correct that normally we do not see criminal

defendants here at her age and station in life," but that the guidelines advise "age alone is not to be a determining factor of the length of someone's sentence." (*Id*., p. 10). The Court's comments are consistent with the Eighth Circuit's ruling in *United States v. Wilder*, 597 F.3d 936, 946 (8th Cir. 2010), that "[a] defendant's age is among the many factors a sentencing court must consider in fulfilling the mandate of § 3553(a) (internal citation omitted), but the court is not required to grant leniency to older defendants."  Indeed, "age is not 'ordinarily' a reason for treating one offender more leniently than another defendant with similar offense conduct and criminal history." *Id*., 597 F.3d at 947 (citing U.S.S.G. § 5H1.1).  A defendant's advanced age is a possible, but not mandatory, basis for granting a downward variance, but under some circumstances advanced age could also be a basis for an upward variance. *United States v. Scott*, 732 F.3d 910, 918 (8th Cir. 2013).

The record shows that the Court carefully considered all the § 3553(a) factors, including Lewis-Zubkin's age and health.  Noting that "to send a 63-year-old woman to prison for what will likely be a life sentence because of her age is not something that is easy to do" (ECF No. 251, p. 16), the Court ultimately determined that to avoid unwarranted sentencing disparities ("I have sent [other defendants engaged in similar conduct] to prison - - for longer terms of sentence than this") (*Id*.), because "this was a large scale conspiracy" (*Id*.), and Lewis-Zubkin "was at the top of the organization other than Mr. Albarran" (*Id*., p. 17), a sentence of 240 months imprisonment was sufficient but not greater than necessary to comply with the goals of sentencing (*Id*.).

"Under very limited circumstances, a prisoner may utilize 28 U.S.C. § 2255 to attack a sentence apparently legal on its face." *Kortness v. United States*, 514 F.2d 167, 170 (8th Cir. 1975).  Those limited circumstances include a sentence "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or

that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . ." *Id.* (internal citations omitted). "[T]he duration of imprisonment imposed by the trial court may not be attacked in a section 2255 proceeding for its severity if the sentence is within statutory limits." *United States v. Moore*, 656 F.2d 378, 379 (8th Cir. 1981) (internal citations omitted), *cert. denied*, 456 U.S. 917 (1982).

Lewis-Zubkin does not claim her sentence was imposed in violation of the Constitution or laws of the United States, that the Court had no jurisdiction to impose her sentence, or that the sentence imposed exceeds the statutory maximum. The sentence to 240 months imprisonment does not exceed the applicable 20-year statutory maximum, and her claim that the sentence is "too extreme" because of her age and health is not cognizable in this § 2255 proceeding.

### B. Ground Two: Guilty Plea Entered "Under Much Duress"

Lewis-Zubkin's second ground for relief is that she pleaded guilty "under much duress" after being "threatened" with a life sentence. (ECF No. 261, p. 5). Her claim is devoid of substance.

### 1. Validity of Guilty Plea

Before accepting a guilty plea, "the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2). One who enters a plea of guilty waives his right to request relief under 28 U.S.C. § 2255 except for those issues related to jurisdiction only. *Smith v. United States*, 876 F.2d 655, 657 (8th Cir. 1989) ("In pleading guilty, a defendant waives all challenges to the prosecution except those related to jurisdiction," including claims regarding search and seizure, privilege against self-incrimination, and failure to disclose favorable evidence), *cert. denied*, 493 U.S. 869 (1989).

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (U.S. 1970), citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), *Machibroda v. United States*, 368 U.S. 487, 493 (1962), and *Kercheval v. United States*, 274 U.S. 220, 223 (1927).

Lewis-Zubkin claims she pleaded guilty "under much duress" because she "was threatened with a life sentence if [she] did not plead guilty." (ECF No. 261, p. 5). She also alleges that she was threatened with a life sentence if she tried to make bond. (*Id.*). She does not identify who allegedly made the threats, nor does she detail the circumstances of how and when the threats were communicated to her.

Recognizing a criminal defendant's maximum possible sentence exposure, and communicating that sentence exposure to a criminal defendant, does not constitute a threat. To the contrary, it is a requirement. Before the Court may accept a plea of guilty, the Court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, *inter alia*, "any maximum possible penalty, including imprisonment, fine, and term of supervised release" and "any mandatory minimum penalty." Fed. R. Crim. P. 11(b)(1)(H) & (I).

Lewis-Zubkin was informed at her arraignment of the four charges against her and the maximum possible penalties for each offense. (ECF No. 38). She was, therefore, informed that if convicted of distribution of more than 50 grams of methamphetamine (Counts 5, 6 and 15 of the Indictment), the maximum possible penalty was not less than 10 years or not more than life imprisonment. (ECF Nos. 3, 52). This was advice of a legal fact, not a threat.

12

Further, defense counsel has a responsibility to "inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo." *Libretti v. United States*, 516 U.S. 29, 50-51 (1995). As the Government points out, for Lewis-Zubkin's counsel *not* to advise her that she was facing a possible life sentence would likely constitute a ground for ineffective assistance of counsel. (ECF No. 269, p. 11). *See e.g. United States v. Day*, 969 F.2d 39, 43 & n. 4 (3d Cir. 1992) ("Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.").

Lewis-Zubkin's claim is also undermined by her representations in the written Plea Agreement and her testimony during the change of plea hearing.

By signing the Plea Agreement, Lewis-Zubkin acknowledged that she had read the agreement and carefully reviewed every part of it with defense counsel; that she fully understood the agreement; that no promises, agreements, understandings, or conditions were made or entered into in connection with her decision to plead guilty except those set forth in the agreement; that she was satisfied with the legal services provided by her defense counsel in connection with the Plea Agreement and matters related to it; and, that she entered into the Plea Agreement freely, voluntarily, and without reservation and her desire to enter a plea of guilty *was not the result of threats or coercion* directed at her or anyone connected with her. (ECF No. 116, ¶ 29).

During the change of plea hearing on December 29, 2016, Lewis-Zubkin testified under oath as follows:

"THE COURT: And did you have an opportunity to read and discuss the Plea Agreement with Mr. Dunagin before you signed it?

A. Yes.

THE COURT: Okay.  And does the Plea Agreement contain your full understanding of the agreement that you and Mr. Dunagin have negotiated with the government?

A. Yes.

THE COURT: It does?  Okay.  And do you understand the agreement?

A. Yes.

THE COURT: Okay.  Now, has anyone made promises or assurances to you of any kind to get you to sign the agreement other than what is in the agreement itself?

A. No.

THE COURT: Is anybody forcing you to plead guilty?

A.  No."  (ECF No. 268, pp. 5-6).

After hearing the Government's presentation of the factual basis to support the Plea Agreement, Lewis-Zubkin agreed the Government could prove those facts if the case were to go to trial.  (*Id*., pp. 12-14).  Attorney Dunagin also agreed the Government could prove all the essential elements of the offense beyond a reasonable doubt, commenting further that "[t]his has been the best researched case I've seen in my 32 years of practice," and "there is no doubt in my mind she would be convicted."  (*Id*., p. 14).

Lewis-Zubkin's representations in the Plea Agreement and her testimony during the change of plea hearing confirm that her guilty plea was knowing, voluntary, and intelligent, and that no threats had been made to force her to plead guilty.

## 2. Standards for Challenging a Guilty Plea

After a guilty plea is entered, "the focus of collateral attack is limited to the nature of counsel's advice and the voluntariness of the plea."  *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) (citing  *Tollett v. Henderson*, 411 U.S. 258, 266 (1973)).  A defendant may only attack

the voluntary and intelligent character of the guilty plea by showing that the advice she received from counsel was not within the range of competence demanded of an attorney in criminal cases. *Tollett*, 411 U.S. at 264-267.

The two-part *Strickland* test applies to challenges of guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To show prejudice, a defendant must show that she would not have "pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59.

### 3. No Showing of Prejudice

Lewis-Zubkin does not allege any deficient performance by her counsel in connection with the guilty plea, only that she pleaded guilty "under much duress" because she was "threatened with a life sentence." (ECF No. 261, p. 5). She does not state how she was prejudiced by such a threat, nor does she allege that she would have insisted on going to trial but for pleading guilty under duress because of the threat of a life sentence. The record clearly demonstrates the "substantial benefit" Lewis-Zubkin received through her Plea Agreement, and her failure to show prejudice is fatal to her second ground for relief.

As reported in the PSR, Lewis-Zubkin's offense level and criminal history category resulted in an advisory guidelines range of 360 months to life imprisonment. (ECF No. 194, ¶ 207). Because her Plea Agreement permitted her to plead guilty only to Count One (conspiracy to distribute methamphetamine), and the statutory maximum for that offense is 20 years, her advisory guidelines range was capped at 240 months imprisonment. (*Id.*). Had she gone to trial, she would have also faced three counts of aiding and abetting the distribution of 50 grams or more of methamphetamine (Counts Five, Six and Fifteen of the Indictment). (ECF No. 1). Conviction on any one of those counts would have exposed her to a mandatory minimum sentence of 10 years

and up to a maximum of life imprisonment (ECF Nos. 2, 52), and her advisory guidelines range would have been 30 years to life imprisonment (ECF No. 194, ¶ 207)[1].

Allowing Lewis-Zubkin to plead guilty to only the conspiracy charge capped her maximum sentence exposure at 20 years and was a significant concession by the Government.  At sentencing, AUSA Brandon Carter stated "[s]he has received a substantial benefit in that she pled to Count I which is capped at 240 months."  (ECF No. 251, p. 9).  The Court also commented that the Government could have required Lewis-Zubkin to plead to something that did not carry a maximum sentence of 20 years, and so "she got a substantial benefit."  (*Id.*, p. 14).

Like any criminal defendant, Lewis-Zubkin undoubtedly felt acute pressure, or "much duress," in connection with her decision to plead guilty to the conspiracy charge, but it was her own conduct in aiding and abetting the distribution of more than 50 grams of methamphetamine on three occasions that resulted in the possibility of a life sentence.  She was not "threatened" with a life sentence; she was properly informed of that legal possibility.  Her guilty plea represented a knowing, voluntary and intelligent choice among the alternative courses of action available to her.  She has not alleged nor shown deficient performance by her counsel related to her decision to plead guilty, and the substantial benefit she received pursuant to her Plea Agreement demonstrates the lack of any prejudice to support her § 2255 claim.

### C. No Evidentiary Hearing is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief."

---

[1] She likely would have lost the three-level reduction for acceptance of responsibility, resulting in a total offense level of 42, and being in criminal history category IV, her advisory guidelines range would still have been 360 months to life imprisonment.  U.S.S.G., Sentencing Table.

*Nguyen v. United States*, 114 F.3d 699, 703 (1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)).

Such are the circumstances in this case. Lewis-Zubkin's § 2255 motion presents only vague and conclusory allegations that are contradicted by the record. She asserts a severity of sentence claim that is not cognizable under § 2255. She also fails to allege and establish deficient performance by her counsel and resulting prejudice to support her grounds for relief. Accordingly, the summary dismissal of Lewis-Zubkin's § 2255 motion, without an evidentiary hearing, is recommended.

### D. No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C. § 2253 only if the applicant has made a substantial showing of the denial of a constitutional right. A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present. *Slack v. McDaniel*, 529 U.S. 473 (2000). Lewis-Zubkin has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III. Conclusion

For the reasons and upon the authorities discussed above, it is recommended that Lewis-Zubkin's Motion Under 28 U.S.C. § 2255 (ECF No. 261) be **DISMISSED with PREJUDICE**.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by**

**the district court.**

DATED this 20th day of March 2019.


/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE